# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | : | **Civil Action No.: 9:21-cv-80338-RKA** |
| ALLECIA SINKFIELD, on behalf of herself and others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PERSOLVE RECOVERIES, LLC, | : | |
| | : | |
| Defendant. | : | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | : | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Introduction**

This case centers on the alleged failure of Persolve Recoveries, LLC ("Defendant") to register as a consumer collection agency with the Office of Financial Regulation of the Florida Financial Services Commission prior to filing debt collection lawsuits against consumers in Florida.[1] Allecia Sinkfield ("Plaintiff") alleged that Defendant's conduct violated sections 1692e, 1692e(5) and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[2] Defendant denies any liability or that its practices violated the FDCPA.

Following extensive litigation, including an adjudicated motion to dismiss, discovery, and with a fully briefed motion for class certification pending, the parties reached an agreement to settle this case whereby Defendant will create a non-reversionary settlement fund in the amount of $20,000 to cover payments to participating class members. Given historical claims rates in consumer class actions, each participating class member here should receive between $73 and $219. Given Defendant's book value net worth, the settlement fund is more than Plaintiff could have recovered for the Class (as defined below) in statutory damages had she prevailed at trial. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting statutory damages in a class action to the lesser of $500,000 of 1% of the net worth of the debt collector).

---

[1]     Pursuant to the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*, prior to engaging in any business in Florida, a person who acts as a consumer collection agency must register with the State of Florida Office of Financial Regulation. Fla. Stat. § 559.553(1).

[2]     An entity's failure to register under Fla. Stat. § 559.553(1) can support a cause of action under the FDCPA. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) ("We therefore hold that a violation of the FCCPA for failure to register may, in fact, support a federal cause of action under Section 1692e(5) of the FDCPA for threatening to take an action it could not legally take.")

Additionally, Defendant is now voluntarily registered with the Office of Financial Regulation of the Florida Financial Services Commission as a consumer collection agency.

Defendant will separately pay the costs of settlement administration and an individual damages award to Plaintiff. Defendant also will pay—separate from the above amounts—Plaintiff's counsel's reasonable attorneys' fees and expenses as awarded by the Court.

Plaintiff now seeks certification of the settlement class and preliminary approval of the settlement. Plaintiff and her counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement. Defendant does not oppose preliminary approval of the settlement.

**Summary of the Settlement**

**I.      The settlement provides monetary compensation for each class member.**

The Settlement Agreement[3] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of: all persons (a) with a Florida address, (b) against whom Persolve Recoveries, LLC filed a complaint in a Florida court, (c) in connection with the collection of a consumer debt, (d) between February 16, 2020 and February 9, 2021. The parties' investigation has revealed approximately 1,805 potential members of the Class, including Plaintiff.

Class members who submit valid, timely claims will receive a pro-rata share of the settlement fund. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, such funds will be

---

[3]      A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of James L. Davidson, attached hereto as Exhibit A.

2

redistributed to the Legal Aid Service of Palm Beach County, Inc.—the *cy pres* recipient selected by the parties.

In addition, Defendant is now voluntarily registered with the Office of Financial Regulation of the Florida Financial Services Commission as a consumer collection agency. Importantly, this Court could not have compelled Defendant to register even had this case gone to trial. *See, e.g.*, *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) (Dimitrouleas, J.) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief to private litigants.").[4]

Finally, in addition to the foregoing, and separate and apart from the settlement fund, Defendant will pay $2,500 to Plaintiff as "additional damages" pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i) and for the general release she is providing, as well as the costs of class notice and administration, and an award of reasonable attorneys' fees and expenses to counsel for Plaintiff, subject to the Court's approval.[5]

## II.     The Settlement Agreement provides for direct mail notice to all class members.

The Settlement Agreement requires an ample notice program consisting of direct mail notice to each potential member of the Class. To that end, the parties have selected Class-Settlement.com to act as the settlement administrator. Class-Settlement.com is an experienced settlement administrator that has previously received approval to administer similar class action settlements. *See, e.g.*, *Acuna v. Medical-Commercial Audit, Inc.*, No.: 9:21-cv-81256-WPD, 2022

---

[4]     Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

[5]     Plaintiff has agreed to seek, and Defendant has agreed not to oppose, no more than $70,000 in attorneys' fees, expenses and litigation costs.

WL 404674, at*2 (S.D. Fla. Feb. 9, 2022) (Dimitrouleas, J.); *Cooper v. Investinet*, No. 1:21-cv-01562-TWP-DML, 2021 WL 5815800, at *2 (S.D. Ind. Dec. 6, 2021); *Lyngaas v. Curaden A.G.*, 436 F. Supp. 3d 1019, 1027 (E.D. Mich. Jan. 30, 2020).

**This Court Should Preliminarily Certify the Class**

## I.     The FDCPA is well-suited for class action treatment.

"Representative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen & Assocs., Inc.*, No. 8:07-cv-1935, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature"). To that end, the Eleventh Circuit uses the objective "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985).

## II.     Plaintiff satisfies the requirements of Rule 23(a).

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (Dimitrouleas, J.) (certifying FDCPA class). Notably, here, because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3)

are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### A.    The Class is so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, between February 16, 2020 and February 9, 2021, Defendant filed lawsuits in Florida against approximately 1,805 persons. Because the class has over 1,800 members dispersed throughout Florida, it is sufficiently numerous that joinder is impracticable. *See Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at *2 (S.D. Fla. May 27, 2020) (Altman, J.) ("This class consists of 353 members. Accordingly, the number of members of the Settlement Class is so numerous that joinder of all class members would be impracticable."); *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 694 (S.D. Fla. 2013) (Altonaga, J.) (plaintiff's preliminary showing of at least 48 class members was sufficient to meet numerosity requirement); *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (King, J.) (numerosity satisfied with estimated class size of at least 50 persons).

**B.** **Plaintiff's claims present questions of law and fact common to the Class.**

Rule 23(a) also requires that there be at least one issue common to all members of the Class. *Drossin*, 225 F.R.D. at 615. The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (Moreno, J.).

The claims asserted by Plaintiff and the Class originate from the same conduct, practice, and procedure on the part of Defendant, namely the collection of debt at a time when Defendant was allegedly not registered with the Office of Financial Regulation of the Florida Financial Services Commission as a consumer collection agency. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. *See, e.g.*, *Collins*, 290 F.R.D. at 694 ("Collins alleges Erin Capital instituted various garnishment proceedings while failing to register with the State of Florida as a consumer collection agency, in violation of the FDCPA. Here, the Court finds common questions of law and fact exist. The crux of the dispute is whether Erin Capital's failure to register as consumer collection agency qualifies as a violation of the FDCPA. A determination of this issue would apply equally and objectively to all of the potential plaintiffs in this action."). For these reasons, courts regularly certify as class actions claims brought because of uniform debt collection conduct. *See, e.g.*, *Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013); *Lewis v. ARS Nat'l Servs., Inc.*, No. 2:09-cv-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 8:08-cv-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (Dimitrouleas, J.); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999).

The Class here, whose members share common claims based on uniform debt collection conduct, should be certified for the same reasons.

### C.   Plaintiff's claims are typical of the claims of the Class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations.").

Here, Plaintiff and the members of the Class allegedly suffered by way of a common practice employed by Defendant in that Defendant sued each of them at a time when Defendant was allegedly not registered as a consumer collection agency. *See, e.g.*, *Collins*, 290 F.R.D. at 696 (since class members "were each subject to [Erin Capital]'s unlicensed and unlawful collection activity," typicality was satisfied). Thus, Plaintiff possesses the same interests and has suffered the same injuries as each member of the Class and asserts identical claims and seeks identical relief on behalf of the unnamed members of the Class.

To be sure, there is no doubt that Plaintiff is a member of the Class and that her claims are typical of those of the other members of the Class. *See* Dkt. No. 1-1 (demonstrating that Plaintiff

is a member of the Class in that Defendant sued her in Florida during the class period). As a result, Plaintiff's claims are typical of those of the Class she seeks to represent.

        **D.**      **Plaintiff, and her counsel, will fairly and adequately protect the interests of members of the Class.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Sols. Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (certifying class action). "While the burden in a class certification motion is on the Plaintiffs, the adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-130 (5th Cir. 2005).

Here, Plaintiff's claims are aligned with the claims of members of the Class. She has been committed to vigorously pursuing the members' claims with their best interests in mind. *See* ECF No. 59-4. Plaintiff has no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the Class. *Id.*

Moreover, Plaintiff has retained the services of counsel—Greenwald Davidson Radbil PLLC ("GDR")—who are experienced in complex class action litigation, will vigorously prosecute this action, and will protect all absent Class members. *See* Ex. A at ¶¶ 8-9 (collecting cases). As a result, Plaintiff satisfies Rule 23(a)(4).

        **E.**      **Plaintiff's counsel should be appointed Class Counsel.**

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims

asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class." Proposed Class Counsel GDR will continue to prosecute this action, as they have done to date, in an efficient and effective manner. In addition to satisfying the adequacy prong of Rule 23(a)(4), GDR also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel. *See, e.g.*, *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 3940256, at *3 (S.D. Fla. Aug. 19, 2019) (Middlebrooks, J.) (appointing GDR as Class Counsel); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (same); *Rodriguez v. Dynamic Recovery Sols., LLC*, Nos. 14-CIV-20933, 14-CIV-24502, 2015 WL 178161, at *1 (S.D. Fla. Jan. 14, 2015) (Bloom, J.) (same).

### III.    Plaintiff satisfies the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Pertinent here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

#### A.    Common questions of law and fact predominate over any individualized inquiries.

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*,

2008 WL 3850657, at *4. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966). As the Northern District of Alabama explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer . . . fraud.  Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled.  Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5.

The same is true here. The central legal issue before this Court is whether Defendant violated the FDCPA by filing lawsuits against consumers in Florida without first registering as a consumer collection agency. Numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized debt collection conduct such as that alleged here. *See, e.g.*, *Collins*, 290 F.R.D. at 700 ("As previously established, the common issue of whether Erin Capital violated the FDCPA by failing to register as a consumer collection agency, would have a direct impact on every class member's effort to establish liability and the class members' entitlement to monetary relief."); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 662 (M.D. Fla. 2015) ("Here, the issues of whether Bush Ross is a debt collector and engaged in

collection activity and whether Bush Ross engaged in an act or omission prohibited by the FDCPA are issues common to Roundtree and the members of each of the proposed classes.").

As a result, Plaintiff readily satisfies the predominance requirement. *See, e.g.*, *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) (Scola, J.) ("As to the FDCPA class, the Court finds that common issues predominate.").

    **B.**    **A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's claims, and the claims of class members.**

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

As the Eleventh Circuit explained, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017). This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016). Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015).

Because the claims in this case all arise from uniform debt collection conduct, a class action is the superior vehicle for determining the rights of absent class members. In certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA [].

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013). For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.").

**This Court should preliminarily approve the parties' settlement as fair,**
**reasonable, and adequate under Rule 23(e).**

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

A full fairness determination is not necessary at this early juncture; nevertheless, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e) itself also requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

Here, Plaintiff is confident that each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable, and should receive approval. And in applying these factors, this Court should be guided foremost by the general principle that

13

settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").

## I.      There was no fraud or collusion behind the parties' settlement.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

Here, the parties engaged in extensive litigation, and months of settlement discussions, before they reached an agreement on settlement. And that agreement occurred after the close of class certification discovery, and only following numerous discussions between counsel, and after Defendant responded to written discovery and sat for deposition. The settlement thus is not a product of collusion and was the result of arm's-length settlement negotiations when each party had a view as to the strengths and weaknesses of its position.

## II.      The complexity, expense, and duration of the litigation favors preliminary approval.

Turning to the second factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (Gold, J.). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different. If the litigation had moved forward, Plaintiff would have had

to obtain class certification over Defendant's objection, and prevail at summary judgment, or trial, and on a potential appeal, to obtain any benefits for members of the Class. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"). Moreover, because damages under the FDCPA are not mandatory, there is no guarantee that Plaintiff would have recovered any money for the Class. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Given these considerations, preliminary approval of the settlement is appropriate, in part, to avoid the uncertainties of trial. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### III. The parties have sufficiently developed the factual record to enable Plaintiff and her counsel to make a reasoned judgment concerning settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties briefed a motion to dismiss, ECF Nos. 13, 17, and 23, engaged in two rounds of class certification briefing, ECF Nos. 36, 42, 45, 59, 61 and 65, and undertook extensive discovery, including regarding the size of the Class and Defendant's net worth—the sole determinant of the Class's total potential statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B). Moreover, the parties had numerous discussions about the merits of the claims and Defendant's defenses.

Further, Plaintiff's counsel is well-versed in FDCPA litigation, having litigated numerous FDCPA class actions nationwide. *See* Ex. A, at ¶¶ 8-9. The settlement was therefore consummated when the parties had a good view towards the strengths and weaknesses of their respective positions, with an understanding of the maximum potential recovery for the Class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### IV. The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. at 314. In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig*., 830 F. Supp. 2d at 1350.

As an initial matter, the settlement fund here amounts to more than 1% of the net worth of Defendant. *See* 15 U.S.C. § 1692k(A)(2)(B); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th

Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards up to certain amounts after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even potentially none at all. Indeed, the risk of a minimal damages award was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages" to members of the class).

Given the foregoing, the immediate relief provided by the settlement is substantial, and a recovery on a participating class member basis of between $73 and $219 represents an excellent result for the Class. Indeed, the anticipated recoveries here compare very favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 9:18-cv-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) (Middlebrooks, J.) ($27.51 per class member); *Claxton*, 2020 WL 2759826, at *2 ($15.67 per class member); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna*

*& Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (same); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member).

What's more, Defendant is now voluntarily registered with the Office of Financial Regulation of the Florida Financial Services Commission as a consumer collection agency—relief that was not necessarily available at trial. *See, e.g.*, *Berg*, 586 F. Supp. 2d at 1346. In sum, considering the benefits obtained here, in comparison to those likely at trial and those obtained in other similar actions, the fact that Defendant is now voluntarily registered as a consumer collection agency, plus the risks in moving forward, this factor supports preliminary approval of the settlement.

### V.     The opinions of Plaintiff and her counsel strongly favor preliminary approval.

Both Plaintiff and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. What's more, Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. *See* Ex. A at ¶¶ 8-15. Correspondingly, Plaintiff's and her counsel's strong support for this settlement militates toward this Court's approval of the same.

### VI.    The settlement treats members of the Class equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim, and as a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### This Court should approve the proposed notice to class members.

Under Rule 23(e), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the Class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for statutory damages and reimbursement of her attorneys' fees and expenses; and (6) how to submit claims and make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice.").

**This Court should schedule a final fairness hearing.**

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Plaintiff respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 90 to 120 days after the Court's preliminary approval of the settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement. As noted, Defendant does not oppose preliminary approval of the settlement.

Dated:  April 6, 2022

Respectfully submitted,

*/s/ James L. Davidson*
James L. Davidson
Florida Bar No. 723371
Jesse S. Johnson
Florida Bar No. 69154

Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Matisyahu H. Abarbanel
Florida Bar No. 130435
Matthew Bavaro
Florida Bar No. 175821
Loan Lawyers
3201 Griffin Road, Suite 100
Ft. Lauderdale, FL 33312
Tel: (954) 523-4357
Matthew@Fight13.com

Counsel for Plaintiff and the proposed
class